IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:06-748-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DARIUS BELLE | ) | |
| _____ | ) | |

The defendant, Darius Belle, pleaded guilty before this court in August 2007 to being part of a drug trafficking conspiracy involving 50 grams or more of crack cocaine. Because he had murdered a fellow drug dealer who had stolen drugs from him during the course of the conspiracy, the defendant's sentencing calculation involved a murder cross-reference under the United States Sentencing Guidelines (USSG). This court sentenced the defendant to 400 months incarceration.

In a *pro se* motion filed on December 4, 2020 (ECF No. 1334), the defendant sought release to home confinement because of the COVID-19 pandemic and the potential threat to his health due to his heart murmur. This court denied the motion without prejudice because the defendant had not exhausted his administrative remedies with the Bureau of Prisons (BOP).

The defendant filed a second *pro se* letter/motion (ECF No. 1337) which simply asked the court if he was eligible for the Fair Sentencing Act. He then filed another motion (ECF No. 1343) through counsel[1] to compel the government to reduce his sentence a second time

---

[1] Attorney Tynika Claxton was appointed to represent the defendant in his 2006 criminal case before this court. In the present motion, counsel seeks reappointment under the Criminal Justice Act. This court

1

under Rule 35.  Alternatively, the defendant moves for compassionate release under the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i).  He submits that he has an extraordinary and compelling reason for release, including the § 3553(a) sentencing factors, his post-conviction rehabilitation, and the sentencing disparity created by his current sentence.

The government has responded to the defendant's mixed motion and requests that this court reduce the defendant's sentence for substantial assistance pursuant to Rule 35.  However, the government opposes the defendant's motion for compassionate relief under the First Step Act and application of the Fair Sentencing Act of 2010.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is granted in part and the government's motion for a reduced sentence under Rule 35 is granted.

## PROCEDURAL HISTORY

The defendant was one of 16 individuals named in a 27-count Indictment returned by the Grand Jury in July 2006. The defendant was named in Count 1 and charged with being a member of a criminal conspiracy to possess with intent to distribute and distribution of 50 grams or more of cocaine base in violation of 21 U.S.C.§ § 841(a)(1), (b)(1)(A), and 846. He was also charged with additional counts of possession with intent to distribute cocaine base (Counts 13, 15, 19, and 21).

---

has generally not appointed counsel in post-judgment motions for compassionate release and will decline to do so here.

2

In August 2007, in accordance with the terms of a written plea agreement (ECF No. 472), the defendant pleaded guilty to Count 1 of the Indictment. The defendant stipulated that he had one prior felony drug conviction which had become final and that the government had properly noticed him with an Information filed pursuant to 21 U.S.C. § 851. This Information subjected the defendant to a mandatory minimum term of imprisonment of 20 years on Count 1 pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The prior conviction was from a 2003 arrest for possession with intent to distribute marijuana. Without this prior conviction, the defendant's mandatory minimum sentence would have been only 10 years.

Significantly, in Paragraph 14 of the Plea Agreement, the parties stipulated that the defendant killed another individual in the course of the conspiracy alleged in Count 1, under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the territorial maritime jurisdiction of the United States, such that the defendant would receive a base offense level of 43, prior to a reduction for acceptance of responsibility.

At sentencing, the Guidelines were calculated as follows: the defendant was held accountable for 387.36 grams of crack cocaine, for a base level of 32. He received a 2-level enhancement for possession of a firearm during a drug trafficking crime which brought the level up to 34. However, when the murder cross-reference of USSG § 2D 1.1(d)( 1) was applied, the defendant's offense level became 43. After a 3-level reduction for acceptance of responsibility, the resulting total offense level was 40. With a criminal history category of III, the defendant faced a Guideline range of 360 months to life. In November 2007, this court sentenced the defendant to 400 months incarceration, with a term of supervised release

of 10 years.

In February 2013, the government filed a motion to reduce the defendant's sentence under Rule 35 for substantial assistance. The court granted the government's motion (which reduced the defendant's offense level from 40 to 39) and imposed a new sentence of 324 months.

The defendant's projected release date is May 7, 2029. He has been in custody on these and related charges since January 2006 and has served more than 15 years of his federal sentence.

Because the defendant has raised multiple grounds for relief in his motion, the court will address each in turn.

A. *Motion to Compel a Reduction under Rule 35(b)*

As noted above, the defendant has already received a 76-month reduction in his sentence as a result of the government's agreement to reward him for his cooperation. In his present motion, he seeks a further reduction under Rule 35(b).

In its sealed response (ECF No. 1356), the government notes that although it cannot be compelled to file another Rule 35 motion for the defendant, it nonetheless files such a motion. The government states that the defendant has provided unrewarded substantial assistance in the investigation and prosecution of other individuals which conforms to the guidelines and policy statements issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994.

The government requests that the court give the defendant an additional 2-level reduction from an offense level of 39 down to 37. In his reply, the defendant seeks a 3-level reduction due to the impact that his cooperation has had on him and his family. With a criminal history category of III, a 2-level reduction would produce a new Guideline range of 262 to 327 months. The court agrees with the government that a 2-level decrease is appropriate that a sentence at the low end of the new range is appropriate. However, before determining the new sentence with the 2-level reduction, the court must also address the defendant's other alternative grounds raised in his motion.

### B. *First Step Act § 401 and § 851 Enhancement*

The defendant first argues that his sentence enhancement pursuant to 21 U.S.C. § 851 at his original sentencing is no longer valid under current law. Specifically, the defendant contends that his September 2003 conviction in South Carolina for possession with intent to distribute marijuana is no longer a felony drug offense, citing *Simmons v. United States*, 649 F.3d 237 (4th Cir. 2011). The defendant claims he did not serve more than 12 months, and actually served a probationary sentence for that marijuana conviction.

As a result of this § 851 enhancement (ECF No. 339), the defendant originally was sentenced pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). And, because the defendant had one prior felony drug conviction, his mandatory minimum term of imprisonment was 20 years. He argues that if he was sentenced today under the First Step Act (and the provisions of the Fair Sentencing Act of 2010), he would only be subject to § 841(b)(1)(B) and face a minimum mandatory sentence of 5 years.

5

The government appears to concede this argument, noting that the defendant's prior conviction would not serve to enhance his statutory penalties because he did not serve more than a year in prison for that offense. The government also states in a footnote that amendments under § 401 of the First Step Act were not made retroactive.

Section 401 of the First Step Act changed both the level of predicate felonies required for sentence enhancement under 21 U.S.C. § 841(b)(1)(A) and the penalties to which such predicates subject a defendant. However, these changes apply only to cases where the offense was committed prior to the enactment of the First Step Act, but a sentence had not yet been imposed as of the date of the First Step Act. Section 401 is not retroactive. The defendant was sentenced in 2007— more than 10 years prior to enactment of the First Step Act in December 2018. Thus, § 401's changes to the predicate felonies under §§ 841(b)(1)(B) and 851 do not apply to the defendant's sentence and the defendant is not entitled to relief.

However, the Fourth Circuit has, in other similar circumstances, held that district courts may apply changes retroactively even when the relevant statute provides that the change is not retroactive. *See United States v. Lancaster*, 997 F.3d 171 (4th Cir. 2021) and *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

Were the court to consider the defendant's sentencing Guidelines without the § 851 enhancement, there would still be no change to his Guideline range. The defendant faced a total offense level of 40 both before and after the Fair Sentencing Act of 2010 as a result of the murder cross-reference.

6

C. *First Step Act § 404(b) and Crack Cocaine Offense*

While the defendant does not specifically refer to § 404 of the First Step Act in his motion, the government states that the defendant pleaded guilty to a "covered" offense and is eligible for consideration of relief.

Section 404(b) of the First Step Act of 2018 relates to crack cocaine offenses and retroactive application of the Fair Sentencing Act of 2010. The First Step Act of 2018 was signed into law on December 21, 2018.[2] One of the changes in the Act relates to the Fair Sentencing Act of 2010[3] which, among other things, reduced statutory penalties for cocaine base ("crack") offenses.[4] Specifically, § 404 of the First Step Act retroactively applies the reduced penalties under the Fair Sentencing Act to "covered offenses" committed *before* August 3, 2010.

The court that imposed a sentence for a covered offense may on its own or on a motion of the defendant, the Director of the Bureau of Prisons, or the attorney for the government, impose a reduced sentence as if the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. A court may not entertain a motion to reduce a sentence if the sentence was previously imposed or reduced in accordance with the

---

[2] Pub. L. 115-015 (S. 756), 132 Stat. 015 (enacted Dec. 21, 2018).

[3] Pub. L. 111-220; 124 Stat. 2372 (2010).

[4] Effective August 3, 2010, the Fair Sentencing Act reduced the amount of cocaine base needed to trigger certain statutory minimum and maximum sentences. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (raising from 50 to 280 grams the amount of cocaine base needed to trigger statutory range of 10 years to life in prison); 21 U.S.C. § 841(b)(1)(B)(iii) (raising from 5 to 28 grams the amount of cocaine base needed to trigger statutory range of 5 to 40 years in prison).

amendments made by the Fair Sentencing Act of 2010 or if a previous motion to reduce the sentence was denied after a complete review of the motion on the merits. Finally, nothing in the First Step Act shall be construed to require a court to reduce any sentence based on the First Step Act's retroactive application of the Fair Sentencing Act of 2010.

The mechanism for bringing a First Step Act motion is found at 18 U.S.C. § 3582(c)(1)(B), which states that a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019). This court's authority for granting a First Step Act motion is broad. Under this provision, "there is no limiting language to preclude the court from applying intervening case law" when evaluating a First Step Act motion. *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020). Furthermore, 18 U.S.C. § 3553(a) "sentencing factors apply in the § 404(b) resentencing context." *Id*. at 674. Finally, "the resentencing court has discretion within the § 404(b) framework to vary from the Guidelines and, in doing so, to consider movants' post-sentencing conduct." *Id*.

It does not automatically follow, however, that the sentence must be reduced. Indeed, the First Step Act indicates, in two different sections, that any relief awarded is discretionary with the sentencing court. Under § 404(b) of the First Step Act, the court "may," but is not required to, grant statutory relief. The discretionary nature of the relief is further emphasized in § 404(c) of the First Step Act. Building on the "may" language in § 404(b), this section provides that "nothing in the section is to be construed to require a court to reduce any sentence" under the Act.

In *United States v. Collington*, 956 F.3d 347 (4th Cir. 2021), the Fourth Circuit clarified three steps that a district court must take when considering a request for relief under § 404(b): (1) accurately recalculate the Guidelines sentence range; (2) correct original Guidelines errors and apply intervening case law made retroactive to the original sentence; and (3) consider the § 3553(a) factors to determine what sentence is appropriate. Thus, a district court must consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those factors, and adequately explain that decision.

The Fourth Circuit also clarified in *United States v. Lancaster*, 997 F.3d 171 (4th Cir. 2021) that a First Step Act proceeding is not intended as a plenary resentencing or complete or new relitigation of Guideline issues or § 3553(a) factors. Rather, the court must look at the gaps left from the original sentencing to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances.

The government posits that because the defendant pleaded guilty to a conspiracy involving 50 grams or more of crack, and because the applicable penalties for this crime were substantially modified by the Fair Sentencing Act, the defendant, if sentenced today, would face the lower penalties associated with § 841(b)(1)(B)—as opposed to (b)(1)(A)—which corresponds to 28 grams or more of cocaine base and which carries a mandatory minimum sentence of 5 years with no prior enhancing convictions, and 10 years with one or more prior enhancing convictions.

The government also states that although the defendant's statutory range was previously enhanced based upon a prior conviction for possession with intent to distribute marijuana, under current law, that prior conviction would not serve to enhance his statutory penalties, as the defendant did not serve more than a year in prison for the marijuana offense.

However, as stated at the outset in this order, the defendant's offense level was not driven by the drug amounts, but by the murder cross-reference. He was held accountable for 387.36 grams of crack cocaine for a base level of 32. He received a 2-level increase for possession of a firearm during a drug trafficking crime, for a new base level of 34. When the murder cross-reference of § 2D1.1(d)(1) was applied, his offense level was increased from 34 to 43. Then, after a 3-level reduction for acceptance of responsibility, the resulting total offense level was 40. With a criminal history category of III, the defendant faced a Guideline range of 360 months to life.

Therefore, post-sentencing changes to § 851 enhancements do not change the specific Guideline that drove the defendant's ultimate sentence—the murder cross-reference. The only impact the retroactive application of the Fair Sentencing Act has is the reduction of the defendant's statutory term of supervised release from 10 years to 8 years.

D. *Motion for Compassionate Release for Health Conditions*

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow

10

exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first

11

finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise."  *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).  Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

In summation, when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86  (4th Cir. 2021).  First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction.  Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing

Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. See 18 U.S.C. § 3582(c)(1)(A) (providing the court may reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). The government does not dispute that the defendant has satisfied this procedural requirement. Indeed, the defendant has attached a copy of his request for compassionate release to the Warden and no response was received back.

As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

13

*Defendant's Medical Condition*

Here, the defendant claims that he suffers from a heart murmur.[5] He contends that this medical condition, coupled with the ongoing COVID-19 pandemic that is especially prevalent in prison facilities, justifies his release for extraordinary and compelling reasons.

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating an inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States of America, v. Andre Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

---

[5] Although the government states that the defendant suffers from both asthma and a heart murmur, none of the defendant's motions or briefs refer to the medical condition of asthma.

14

The government responds by suggesting that although the defendant claims he suffers from both asthma and a heart murmur, he provides no evidence of these conditions and the medical records provided by the BOP from 2019 to present does not mention of either of these medical conditions.

While it is true that the defendant's Presentence Report (PSR) indicated that the defendant was diagnosed with a heart murmur as a child and was prescribed medications which he took until he was 12, it is not clear if this condition continued into adulthood. In addition, as the government suggests, the defendant's BOP medical records do not reveal the existence of either of these conditions.

Moreover, the defendant's medical condition is not identified by the CDC as increasing a person's risk for developing serious illness from COVID-19.

The government sets forth a comprehensive discussion of the strenuous measures the BOP is taking to protect the health of the inmates in its charge and to mitigate the risks of COVID-19. According to the government, the BOP has offered a vaccine to every inmate in BOP-managed institutions, with the exception of some inmates who were recently admitted at a facility after the administration of vaccines at that facility. The BOP has administered a total of 212,350 doses to staff and inmates nationwide.[6]

---

[6] The government notes that at the Federal Correctional Center in Yazoo City, where the defendant is housed, the BOP has fully vaccinated 360 staff members and 2002 inmates. The government also notes that the defendant was administered his first dose of the COVID-19 vaccine (Pfizer) on May 7, 2021, and received the second dose on May 26, 2021.

15

For the reasons stated above, the court concludes that the defendant has not demonstrated an extraordinary and compelling reason for his release on this basis. Moreover, even if this court were to determine that the defendant had demonstrated an extraordinary and compelling reason, the court would nevertheless exercise its discretion to decline to order the defendant's release or otherwise reduce his sentence. The court makes this determination after carefully reviewing the facts of the instant case, the defendant's post-sentencing conduct, and all of the § 3553(a) factors.

Importantly, even if the court were to conclude that the defendant has demonstrated an "extraordinary and compelling" reason for compassionate release, this court would nevertheless exercise its discretion not to disturb the defendant's sentence based upon a review of the 18 U.S.C. § 3553(a) factors. *United States v. High*, No. 20-7350, 2021 WL 1823289 (4th Cir. May 7, 2021)("In any event, if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must consider the § 3553(a) sentencing factors to the extent that they are applicable in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.")(cleaned up).

After carefully considering the facts of this case and the defendant's prior record, the court concludes that the defendant would present a danger to the community if released now. In doing so, the court has carefully analyzed and applied all of the § 3553(a) factors to conclude that the defendant's sentence is sufficient, but not greater than, necessary to serve the statutory purposes of sentencing. The court will thus proceed to set out its explanation

16

with regard to the § 3553(a) factors in order.

*Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and Circumstances of the Offense.*

As noted above, the defendant was charged with and pleaded guilty to being a member of a conspiracy related to the distribution of 50 grams or more of crack cocaine. This is a serious crime to be sure. However, the crime was even more serious because the defendant was involved in a drug-related murder when he killed an individual who allegedly stole drugs from the defendant. Because of this, the murder cross-reference in the Guidelines was the driving force behind the calculation of the defendant's sentence, not the amount of drugs or the § 851 enhancement.

It cannot be gainsaid that the defendant pleaded guilty to a most serious offense. He was involved with a large quantity of a dangerous controlled substance that has afflicted many citizens in South Carolina and elsewhere. Even worse, he murdered a fellow human being out of a desire to avenge the purported theft of cocaine in the victim's possession.

2. *History and Characteristics of the Defendant.* The defendant was 20 years of age at the time of his arrest for the instant offense. He has served just more than 15 years of his current sentence and is scheduled to be released in May 2029. He had one § 851 enhancement (possession with intent to distribute marijuana in 2003) which may no longer qualify as an § 851 enhancement. His other convictions are relatively minor, and include failure to stop for a blue light and petty larceny. The defendant's post-sentencing conduct is outlined below.

17

This court acknowledges the defendant's argument that medical science has shown that the portion of the brain most tied to executive functioning is not fully mature until well until a person's 20s. The frontal lobe is the part of the brain responsible for important functions such as planning, organizing information, and thinking about possible consequences of action. This court is mindful and respectful of the argument, but must reject it under the circumstances of this case. An individual 20 years of age who has not yet experienced full development of the frontal lobe of the brain may well make foolish decisions such as those to experiment with illegal drugs or engage in reckless behavior or the like. However, the severity of taking a fellow human being's life because that individual stole dangerous drug from the defendant cannot be excused on immaturity alone.

*Post-Sentencing Conduct*

The defendant has earned over 14 certificates for completed programs during his 15 year incarceration, relating to subjects from job preparedness to health and wellness in general. He earned his GED while at the BOP. He has worked in food service, facility maintenance, and electrical. He is currently a unit orderly. He has plans to live with an Aunt in Columbia, South Carolina if released, and purportedly has a job awaiting for him at a logistics company. The defendant has one teenaged son.

While in the BOP, the defendant has incurred the following violations.[7] In 2010, he was sanctioned for possessing unauthorized item (level 305) and disallowed 14 days good

---

[7] According to the BOP, 100-level offenses are considered the most serious, 200-level offenses are moderately serious; and 300-level offenses are the least serious.

conduct time and forfeited 7 days of earned good conduct time, was placed into disciplinary segregation for 15 days, suspended on 180 days clear conduct, lost commissary privileges for 180 days, and lost phone privileges for 90 days.  In January 2011, he was sanctioned for giving/accepting money without authority (level 328); again, he was disallowed 14 days good conduct time. He was placed into disciplinary segregation for 15 days, suspended on 180 days clear conduct, lost commissary privileges for 90 days, and lost phone privileges for 30 days.  In August 2012, the defendant was sanctioned for possessing unauthorized item (level 305) and lost commissary privileges for 60 days.  In May 2018, the defendant was sanctioned for possessing a non-hazardous tool (tobacco) (level 331); he lost phone and commissary privileges for 90 days.  In July 2018, he was cited for fighting with another person (level 201); he was disallowed 27 days of good conduct credit and lost e-mail privileges for 3 months.

Most recently, the defendant was sanctioned on September 3, 2020 for being in unauthorized area (level 316) for which he lost commissary privileges for 30 days. Less than two months later, he incurred his most serious infraction—he was cited for disruptive conduct-greatest (Level 199). He was disallowed 41 days good conduct credit and lost commissary privileges for a year.  In total, the defendant has lost 103 days of good conduct credit as a result of his violations.

3.  *Seriousness of the Crimes*.  As noted, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The defendant has demonstrated his violent and deadly propensities by taking the life of a fellow human being.

7. *Need to Avoid Unwarranted Sentencing Disparities*. There were no co-defendants in this case with which to compare the defendant's sentence. However, his sentence is not out of line with other defendants who have killed other individuals.

CONCLUSION

For all the foregoing reasons, the court determines that the defendant has not demonstrated an extraordinary and compelling reason for compassionate relief under § 3582(c)(1)(A). Moreover, even if the court were to conclude that the defendant has demonstrated an extraordinary and compelling reason for release based upon his medical condition and *McCoy*, this court would nevertheless decline to modify his sentence. The court reaches this conclusion after carefully considering the individualized circumstances of

20

the case, as reflected in the § 3553(a) factors, and as supplemented by the defendant's record while incarcerated.

With regard to § 404(b), the court finds that after a recalculation of the Guidelines range and consideration of the § 3553(a) factors, the defendant is not entitled to relief under this provision of the First Step Act.

As to § 401 and the defendant's challenge to his § 851 enhancement, the court agrees that even though the defendant's prior marijuana conviction would not now serve to enhance his statutory penalties, the murder cross-reference remains in place and this court declines to reduce his sentence after considering the § 3553(a) factors.

Finally, the court determines that the defendant is entitled to have his sentence reduced by virtue of the government's Rule 35 motion. The court will grant the government's motion (ECF No. 1356) and reduce the defendant's offense level of 39 by 2 levels and sentence him to the new Guideline level of 37, which produces a range from 262 to 327 months. The defendant's custodial sentence is hereby reduced from 324 months to 262 months, which is the low end of the Guideline range. The defendant's term of supervised release is reduced from 10 years to 8 years. All other terms and conditions of the original judgment remain in full force and effect.

The clerk may docket the defendant's motions (ECF No. 1337, 1343) as granted in part and denied in part.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

October 15, 2021                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                        United States District Judge